1  ROSENDO GONZALEZ (State Bar No. 137352)
   GONZALEZ & ASSOCIATES
2  A PROFESSIONAL LAW CORPORATION
   530 S. Hewitt St., Ste. 148
3  Los Angeles, CA 90013
   Telephone (213)452-0070
4  Facsimile (213)452-0080
   E-mail: rossgonzalez@gonzalezplc.com
5
   Attorneys for Timothy and Susan
6  Creager, Creditors and Plaintiffs

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  RIVERSIDE DIVISION

11
    In re                          )    BK. No. 6:12-bk-35247-MH
12                                  )       [Chapter 7]
    GARY J. GLADD f/a/w Tag         )
13  Lighting dba Home Lighting and  )
    TAMMY GLADD aka Tammy Harper    )
14  aka Tammy Williams aka Tammy    )
    Jones,                          )
15                                  )
              Debtors,              )
16                                  )    Adv. No. _____
                                    )
17  _____)
                                    )
18                                  )    COMPLAINT:
    TIMOTHY CREAGER and SUSAN       )
19  CREAGER,                        )    (i) TO AVOID FRAUDULENT
                                    )    TRANSFERS PURSUANT TO 11
20            Plaintiffs,           )    U.S.C. §§ 544 AND 548; and,
                                    )
21  v.                              )
                                    )    (ii) TO RECOVER AVOIDED
22  ZACHERY WILLIAMS aka ZACHERY    )    TRANSFERS PURSUANT TO 11
    TAYLOR WILLIAMS and COLLIN      )    U.S.C. § 550
23  WILLIAMS aka COLLIN TAYLOR      )
    WILLAIMS,                       )
24                                  )
              Defendants.           )
25                                  )
    _____)
26

27  ///

28  ///

P:\home\3343\3343.052.complaint fraudulent tranfers.wpd
11/7/14 RG                          -1-

1    Timothy Creager and Susan Creager, creditors in this

2  bankruptcy case and the plaintiffs in this adversary proceeding

3  (collectively, the "Creager Creditors" or "Plaintiffs")[1]

4  respectfully represent and allege as follows:

5

6              **ALLEGATIONS COMMON TO EACH CAUSE OF ACTION**

7

8    1.   This adversary proceeding arises in and relates to

9  bankruptcy case, *In re GARY J. GLADD f/a/w Tag Lighting dba Home*

10  *Lighting and TAMMY GLADD aka Tammy Harper aka Tammy Williams aka*

11  *Tammy Jones*, which is presently pending before the United States

12  Bankruptcy Court for the Central District of California,

13  Riverside Division.

14    2.   This bankruptcy case was commenced by Gary J. Gladd ("G.

15  Gladd") and Tammy Gladd ("T. Gladd")(collectively, the "Debtors"

16  or the "Defendants"), with the filing of a voluntary petition for

17  protection under Chapter 7 of Title 11 of the United States

18  Bankruptcy Code on November 9, 2012.

19    3.   This Court has jurisdiction over this adversary

20  proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

21    4.   Venue is proper in this district pursuant to

22  23 U.S.C. § 1409.

23

24    [1] The Creagers Creditors and the Trustee have entered into an

25  agreement, subject to Bankruptcy Court's approval, for the estate
   to sell/assign/transfer to the Creager Creditors the estate's

26  properties, rights and voidance powers in exchange for a
   percentage of the recovered assets.  This adversary proceeding is

27  commenced prior to the approval of that agreement with the
   consent and knowledge of the Trustee to protect the estate's

28  voidance rights under Section 546 of the Bankruptcy Code.

1    5.    This action is a core proceeding under 28 U.S.C.

2  § 157(b)(2)(A), (H) and (O).  This Court can and should enter a

3  final judgment herein.

4    6.    Robert L. Goodrich was duly appointed as the Chapter 7

5  trustee (the "Trustee").

6    7.    It is the Plaintiffs' understanding that T. Gladd has

7  two children from a prior marriage and they are Zachery Williams

8  aka Zachery Taylor Williams ("Z. Williams") and Collin Williams

9  aka Collin Taylor Williams ("C. Williams"), the defendants in

10  this adversary proceeding (collectively, the "Defendants").

11    8.    In Schedule "B," the Debtors disclosed having personal

12  properties in the collective amount of $57,500, including:

13    (i) two checking accounts at Citibank with a collective

14  balance of $600 (collectively, the "Citibank Accounts");

15    (ii) stock and interest in "Tag Lighting" with the

16  representation that "this business is inactive and has not

17  assets" and disclosing the Debtors' operation of "Home Lighting"

18  with the representation that "has been out of business for many

19  years";

20    (iii) "consulting work through a dba called Millennium

21  Design Group. She has no active 'accounts' at the moment" with an

22  "unknown value";

23    (iv) $11,000 for "tax refunds for 2010 and 2011"

24  (collectively, the "Tax Refunds"); no information was provided as

25  to the 2012 tax returns; and,

26    (v) an interest in a patent for a ceiling fan designs (with

27  a purported value of $22,000)(the "Patent Royalties") wherein

28  "the debtor gets some commissions (typically $5,000/year, tops)".

9.   In Schedule "C," the Debtors took the exemptions for various personal properties, including $22,000 for the Patent Rights and $600 for the Citibank Accounts under Section 703.140 of the California Code of Civil Procedure.  The Debtors did not claim an exemption as to the Tax Refunds.

10.   In Schedule "F," the Debtors identified unsecured debts in the collective amount of $902,810, including $700,000 owing to the Creager Creditors.

11.   In Schedule "I," the Debtors represented that G. Gladd (through his employment with Walters Wholesale Electric) was receiving $5,000 per month in commissions.  They further represented that T. Gladd (as an independent contractor for Walters Wholesale Electric) was receiving $4,000 per month.

12.   In Schedule "J," the Debtors represented monthly expenses in the collective amount of $8,418 (resulting in a monthly net income of $474.44).

13.   In response to question no. 1 of the Statement of Financial Affairs, the Debtors disclosed having received $29,060 for 2010 ["includes self employment, commissions, draws and passive income from the past consulting work"], $20,587 for 2011 ["includes self employment, commissions, draws and passive income from the past consulting work"] and $40,000 for 2012 ["includes self employment, commissions, draws and passive income from the past consulting work"].

14.   In response to question no. 4 of the Statement of Financial Affairs, the Debtors disclosed two lawsuits: (i) *Harper v. Claws & Paws* (Case No. RIC429560)(the "Harper Lawsuit") with the representation that it was "settled" and (ii) *Citibank, N.A.*

1  *v. Gary Gladd* (Case No. RIC1206343) with the representation of

2  "settlement agreement"). that had resulted in settlements.

3      15.  In response to question no. 10 of the Statement of

4  Financial Affairs, the Debtors did not disclose any transfer of

5  any property, value or money to anyone within two years prior to

6  the bankruptcy filing.

7      16.  In response to question no. 14 of the Statement of

8  Financial Affairs, the Debtors revealed that they were holding

9  $20,000 for Mrs. Gladd's two minor children at Citibank with the

10  representation that: "[t]he accounts have $10,00 each (total

11  $20,000) and this is all 100% the children's money.  The children

12  get full access to the money when they turn 18."

13      17.  In response to question no. 18 of the Statement of

14  Financial Affairs, the Debtors disclosed the following business

15  operations: (i) Home Lighting - 2003 - 2004, (ii) Millennium

16  Design Group (no dates), and (iii) Tag Lighting - 2003 - present.

17      18.  The initial December 13, 2012 meeting of creditors has

18  been continued several times for the production of documents and

19  information.

20      19.  In the amended Schedule "B," filed on February 6, 2013,

21  the Debtors now disclosed their 2010 and 2011 tax refunds as

22  $8,200 [instead of $11,000]; no information was provided as to

23  the 2012 tax returns.

24      20.  On February 15, 2013, the Creager Creditors filed a

25  motion seeking to conduct the examination of the Debtors on March

26  22, 2013, and seeking the production of documents by March 15,

27  2013, pursuant to Rule 2004 of the Federal Rules of Bankruptcy

28  Procedure (the "Rule 2004 Motion").

21.   The Rule 2004 Motion was granted by the Court by an order entered on February 26, 2013 (the "February 2013 Order").

22.   As to the document production and examination, the Debtors and the Creager Creditors entered into a stipulation to continue the deadlines set by this Court's February 2013 Order. That stipulation was approved by this Court by an order entered on April 1, 2013 (the "April 2013 Order").

23.   On April 4, 2013, the Debtors produced some of the requested and ordered documents.

24.   However, a vast number of the identified and ordered documents were missing.

25.   On or about April 29, 2013, the Creager Creditors filed the motion to find the Debtors in civil contempt and for the imposition of monetary sanctions (the "Motion for Contempt").

26.   On or about May 9, 2013, this Court entered an order to show cause against the Debtors for their failure to adhere to the prior orders (the "May 2013 OSC Order").

27.   After extensive oral argument at the June 12, 2013 hearing on the Motion for Contempt, wherein T. Gladd personally appeared and was permitted to personally argue her contentions, this Court granted the Creager Creditors' Motion for Contempt.

28.   Pursuant to the July 2013 Order, the Debtors were required to produce the identified documents by August 1, 2013. *See*, Section 2, page 2 of the July 2013 Order.

29.   On or about July 31, 2013, the Debtors produced a number of documents [many were copies of the documents previously produced and several were incomplete copes such as the bank statements].

30.   On or about September 19, 2013, the Debtors produced additional documents.

31.   On or about November 5, 2013, the Creager Creditors filed and served a motion requesting an order dismissing this bankruptcy case pursuant to 11 U.S.C. §§ 305 and 707, or in the alternative and pursuant to 28 U.S.C. § 157(c)(1) and Rule 70 of the Federal Rules of Civil Procedure, requesting that this Court make the findings of fact and conclusions of law [for referral to the United States District Court for the Central District of California](the "Creager Creditors' Motion for Criminal Contempt").

32.   The Creager Creditors Motion for Criminal Contempt was granted in part [monetary sanctions] and denied in part [dismissal/criminal contempt] at the hearing on January 29, 2014 (the "February 2014 Order").

33.   On May 9, 2014, the Creager Creditors conducted the examination of G. Gladd under Rule 2004 of the Federal Rules of Bankruptcy Procedure.  During that examination, G. Gladd identified a number of documents and information that he agreed to provide prior to his continued examination and prior to T. Gladd's examination.  G. Gladd's examination was not concluded pending the production of the missing documents.

34.   On or about May 12, 2014, Rosendo Gonzalez of Gonzalez & Associates, P.L.C., counsel for the Creager Creditors ("Gonzalez"), wrote an email to the Debtors identifying the still missing documents that G. Gladd had agreed during his May 9, 2014 examination to produce.

///

1    35.  On August 6, 2014, the Creager Creditors conducted the

2  examination of T. Gladd under Rule 2004 of the Federal Rules of

3  Bankruptcy Procedure.  During that examination, T. Gladd

4  identified a number of documents and information that she [as

5  well as G. Gladd] had previously agreed to provide.  T. Gladd's

6  examination was not concluded pending the production of the

7  missing documents.

8    36.  On or about August 6, 2014, Gonzalez wrote an email to

9  the Debtors identifying the still missing documents that T. Gladd

10  [as well as G. Gladd] had agreed during her August 6, 2014

11  examination to produce.

12    37.  The examinations of the Debtors have not been completed

13  due in part to the ongoing failure to produce all previously

14  requested and identified documents.

15    38.  That is, and while some of the documents have been

16  produced by the Debtors, there are a number of documents

17  identified in the February 2013 Order and April 2013 Order that

18  have not been produced.  Hence, there may be additional transfers

19  of value, money, property or consideration from the Debtors or

20  other related parties to the Defendants that have not been so far

21  disclosed or revealed.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**FIRST CLAIM FOR RELIEF**

**(To Avoid Fraudulent Transfers Against Defendants –**

**Pursuant to 11 U.S.C. §§ 544(b) and 548(a)(1)(A)**

**and Pursuant to Cal. Civ. Code § 3439.04(a)(1))**

39.   Plaintiffs repeat the allegations in paragraphs 1 through 38 of this complaint with the same effect as if set forth here.

40.   Prior to the commencement of the bankruptcy case and on or about July 24, 2008, the Debtors, individually and on behalf of Z. Williams, C. Williams and Tag Lighting, Inc. dba Home Lighting executed an "irrevocable assignment of proceeds" agreeing to assign to the Creager Creditors $860,920.68 from any of the proceeds from the Harper Lawsuit (the "Irrevocable Assignment").  A copy of the Irrevocable Assignment is attached hereto and is incorporated herein as Exhibit "1."

41.   A settlement was reached on or about February 27, 2012, in the Harper Lawsuit (the "Settlement Agreement").  A copy of the Settlement Agreement is attached hereto and is incorporated herein as Exhibit "2."

42.   As part of the Settlement Agreement, a payment was made in the amount of $440,000 in full satisfaction of the Harper Lawsuit.  *See*, Section 1, page 2 of the Settlement Agreement [Exhibit "2"].

43.   As part of the Settlement Agreement, the Debtors executed a "consent to settlement and authorization to make disbursements" (the "Authorization").  A copy of the

///

1 | Authorization is attached hereto and is incorporated herein as

2 | Exhibit "3."

3 |      44.    It is the Plaintiffs' understanding that within two

4 | (3) years prior to the commencement of this bankruptcy case, the

5 | Debtors and/or their counsel in the Harper Lawsuit and/or other

6 | related parties made disbursements in the collective amount of

7 | $20,000 to the Defendants (collectively, the "Harper Lawsuit

8 | Proceeds Transfer").

9 |      45.    It is the Plaintiffs' understanding that the same

10 | $20,000 amount that was transferred is the same amount identified

11 | by the Debtors in response to question no. 14 in the Statement of

12 | Financial Affairs.

13 |      46.    Those funds were and/or are either properties of the

14 | Creager Creditors [pursuant to the Irrevocable Assignment] and/or

15 | properties of the Debtors and this bankruptcy estate.

16 |      47.    The Harper Lawsuit Proceeds Transfer constituted a

17 | transfer of property of the Debtors and was made to or for the

18 | benefit of the Defendants.

19 |      48.    The Plaintiffs contend that the Debtors and/or other

20 | parties on their behalf transferred a value for the benefit of

21 | the Defendants and within four (4) years of the Debtors'

22 | bankruptcy filing.

23 |      49.    Plaintiffs contend that the Harper Lawsuit Proceeds

24 | Transfer was made and incurred with the actual intent to hinder,

25 | delay or defraud entities to which the Debtors were, and would

26 | thereafter become, indebted.

27 | ///

28 | ///

P:\home\3343\3343.052.complaint fraudulent tranfers.wpd
11/7/14 RG                              -10-

50.    Pursuant to the provisions of California Civil Code § 3439.04(a)(1), the Uniform Fraudulent Transfer Act 11 U.S.C. § 544(b), and further pursuant to 11 U.S.C. § 548(a)(1)(A), the Plaintiffs are entitled to avoid the Harper Lawsuit Proceeds Transfer.

### SECOND CLAIM FOR RELIEF

### (To Avoid Fraudulent Transfers Against Defendants – Pursuant to 11 U.S.C. §§ 544(b) and 548(a)(1)(B) and Pursuant to Cal. Civ. Code § 3439.04(a)(2)(A))

51.    Plaintiffs repeat the allegations in paragraphs 1 through 50 of this complaint with the same effect as if set forth here.

52.    Plaintiffs contend that the Harper Lawsuit Proceeds Transfer was one for which the transferors-Debtors did not receive a reasonably equivalent value in exchange and were ones which occurred at a time when the transferors-Debtors were insolvent or after and as a result of which they became insolvent.

53.    Pursuant to the provisions of California Civil Code § 3439.04(a)(2)(A), Uniform Fraudulent Transfer Act 11 U.S.C. § 544(b), and further pursuant to 11 U.S.C. § 548(a)(1)(B)(i), the Plaintiffs are entitled to avoid the Harper Lawsuit Proceeds Transfer.

///

///

///

### THIRD CLAIM FOR RELIEF

### (To Avoid Fraudulent Transfers Against Defendants –

### Pursuant to 11 U.S.C. §§ 544(b) and 548(a)(1)(B)

### and Pursuant to Cal. Civ. Code § 3439.04(a)(2)(B))

54.   Plaintiffs repeat the allegations in paragraphs 1 through 53 of this complaint with the same effect as if set forth here.

55.   To the extent that the Harper Lawsuit Proceeds Transfer was not payment of an antecedent obligation, Plaintiffs believe that the Harper Lawsuit Proceeds Transfer was one for which the transferors-Debtors received less than a reasonably equivalent value in exchange and were ones which occurred at a time when the transferors-Debtors were engaged in or about to engage in business or transactions with unreasonably small assets and property.

56.   Pursuant to the provisions of California Civil Code § 3439.04(a)(2)(B), the Uniform Fraudulent Transfer Act, 11 U.S.C. § 544(b), and further pursuant to 11 U.S.C. § 548(a)(1)(B)(ii), the Plaintiffs are entitled to avoid the Harper Lawsuit Proceeds Transfer.

///
///
///
///
///
///
///

**FOURTH CLAIM FOR RELIEF**

**(To Avoid Fraudulent Transfers Against Defendants –**

**Pursuant to 11 U.S.C. §§ 544(b) and 548(a)(1)(B))**

57.   Plaintiffs repeat the allegations in paragraphs 1 through 56 of this complaint with the same effect as if set forth here.

58.   To the extent that the Harper Lawsuit Proceeds Transfer was not payment of an antecedent obligation, Plaintiffs are informed and believes and thereon alleges that the Transfer was one for which the transferors-Debtors received less than a reasonably equivalent value in exchange and was one after which the Debtors intended to incur, or believed they would incur, debts that would be, as they matured, beyond their ability to pay.

59.   Pursuant to the provisions of 11 U.S.C. § 544(b) and the applicable provisions of the California Civil Code, and further pursuant to 11 U.S.C. § 548(a)(1)(B)(iii), the Plaintiffs are entitled to avoid the Harper Lawsuit Proceeds Transfer.

**FIFTH CLAIM FOR RELIEF**

**(To Recover Property or Damages on**

**Account of Avoided Transfers Against Defendants –**

**Pursuant to 11 U.S.C. § 550(a)(1))**

60.   Plaintiffs repeat the allegations in paragraphs 1 through 59 of this complaint with the same effect as if set forth here.

61.    With respect to the Harper Lawsuit Proceeds Transfer, the Defendants were the initial transferees of the Harper Lawsuit Proceeds Transfer, which is subject to avoidance by virtue of the first four (4) claims for relief stated above.

62.    By virtue of 11 U.S.C. § 550(a)(1), the Plaintiffs are entitled to recover the voided transfer from the Defendants.

## SIXTH CLAIM FOR RELIEF

### (To Recover Property or Damages on

### Account of Avoided Transfers Against Defendants

### Pursuant to 11 U.S.C. § 550(a)(2))

63.    Plaintiffs repeat the allegations in paragraphs 1 through 62 of this complaint with the same effect as if set forth here.

64.    With respect to the Harper Lawsuit Proceeds Transfer, the Defendants were the secondary (immediate or mediate) transferees of the Harper Lawsuit Proceeds Transfer, which is subject to avoidance by virtue of the first four (4) claims for relief stated above.

65.    By virtue of 11 U.S.C. § 550(a)(2), the Plaintiffs are entitled to recover to voided transfers from the Defendants.

WHEREFORE, the Plaintiffs pray for judgment against the Defendants as follows:

1.    On the First, Second, Third and Fourth Causes of Action, to avoid the fraudulent transfer of property of the estate against the Defendants;

///

1     2.    On the Fifth and Sixth Causes of Action, to

2  recover the voided transfer of property of the estate;

3     3.    For costs of suit incurred herein; and

4     4.    For such other and further relief as the Court may

5  deem just and proper.

6  Dated:  November ___, 2014.    GONZALEZ & ASSOCIATES
                                  A Professional Law Corporation
7

8

9

10                               By:_____
                                     ROSENDO GONZALEZ
11                                Counsel for Timothy Creager and
                                  Susan Creager, Creditors and
12                                Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "1"

'988  11:59  6255748891  DENNIS CODSSO LAWOFF  PAGE  82

## IRREVOCABLE ASSIGNMENT OF PROCEEDS

### STATEMENT OF ASSIGNMENT

1. For valid consideration received, we, the following Assignors: Tammy Kay Harper, an individual; Collin Taylor Williams, a minor by and through his Guardian Ad Litem, Tammy Kay Harper; Zachery Taylor Williams, a minor by and through his Guardian Ad Litem, Tammy K. Harper; Tag Lighting, Inc., dba Home Lighting; and Gary Gladd, an individual, irrevocably assign payment to Tim Creager, Assignee, the sum of $$860,920.68 from any proceeds that each of us is entitled to arising from the settlement and/or judgment arising from that lawsuit known as <u>TAMMY KAY HARPER, ET. AL. V. CLAWS AND PAWS, ET. AL.</u> Superior Court of Riverside County, California, Case No. RIC 429560. This amount reflects sums loaned to Assignors by Timothy Creager as and for the payment of attorney fees and costs incurred by Assignors arising from the aforementioned lawsuit. This amount shall be payable to Assignee upon payment(s) to and/or received by Counsel of record on behalf of Assignors, in said litigation, WLF ! THE WILLIAMS LAW FIRM PC until the underlying obligation is satisfied.

### INDEBTEDNESS TO ASSIGNEE

2. Assignors acknowledges the debt obligation to Assignee in the above referenced amount.

### UNDERLYING TRANSACTION

3. The transaction to which this assignment relates is the sums loaned by Assignee and paid to Assignors and/or its counsel in the above referenced lawsuit as and for attorney fees and costs incurred by Assignors in said lawsuit.

### SOLE ASSIGNMENT

4. Assignors affirm that no other assignment exists in connection with the transaction described above.

### TIME OF ESSENCE

5. Time is of the essence in this Assignment.

### EFFECT ON HEIRS AND SUCCESSORS

6. This Assignment and each of its provisions shall be binding on and shall inure to the benefit of the respective heirs, devisees, legatees, executors, administrators, trustees, successors, and assigns of the parties to this Assignment.

### AMENDMENTS TO ASSIGNMENT AND IRREVOCABILITY

7. This Assignment may be amended only by a writing signed by both Assignors and Assignee.

7008  11:58  5265748091                DENNIS COSSO LAWOFF                PAGE  03

Assignors hereby acknowledge and agree that the within Assignment may not be revoked, canceled, withdrawn and or modified in any manner without the written consent of the Assignee.

### EFFECT OF PARTIAL INVALIDITY

8. If any term or provision of this Assignment or an application thereof shall be held invalid or unenforceable, the remainder of this Assignment and any application of the terms and provisions shall not be affected thereby, but shall remain valid and enforceable.

### GOVERNING LAW

9. This assignment shall be governed by and construed in accordance with the laws of California.

Dated: July 24, 2008

_Tammy K Harper_
Tammy Kay Harper aka Tammy K. Harper
for herself and as Guardian Ad Litem for
Collin Taylor Williams and Zachery Taylor Williams

_Tammy K Harper_
Tag Lighting, Inc., dba Home Lighting, by its
President, Tammy Kay Harper aka Tammy K. Harper,
aka Tammy Kay Gladd

_Gary Gladd_
Gary Gladd

NOTARY'S CERTIFICATE

See attachment

24/2008  11:24   6285748881          DENNISCOSSO LAWOFF              PAGE  85

## NOTICE OF ASSIGNOR OF ASSIGNMENT

WLF ! THE WILLIAMS LINDBERG LAW FIRM, PC
J. Craig Williams, Esq.
Joseph R. McFaul, Esq.
100 Bayview Circle, South Tower, Suite 330
Newport Beach, California 92660-2984

Dear Sirs:

Please take notice that on July 24, 2008, the below individuals and /or entities assigned and transferred, to the extent of $860,920.68, their respective interests arising from the payment to them of any proceeds arising from the litigation as described in Exhibit A, attached hereto and all provisions therein incorporated herein by reference. I direct you to make all payments, from funds first received, to the Assignee, Tim Creager of 11470 Sixth Street, Rancho Cucamonga, Ca 91730.

We declare that your payment to the Assignee per Exhibit A shall discharge you from your obligation to pay said proceeds to the undersigned, as your clients and the Plaintiffs, in the lawsuit described in Exhibit A.

Dated:

July 24, 2008:

_____
Tammy Kay Harper aka Tammy K. Harper for
herself and as Guardian Ad Litem for Collin Taylor
Williams and Zachery Taylor Williams

July 24, 2008

_____
Tammy Kay Harper aka Tammy K. Harper aka Tammy Kay
Gladd, President of Tag Lighting, Inc., dba Home Lighting

July 24, 2008

_____
Gary Gladd

# Exhibit "2"

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement ("Agreement") is made as of this _____ day of February, 2012 by, between and among the following parties to a legal action filed in the Superior Court of the State of California, County of Riverside, Riverside Branch, under Case No. RIC 429560 (the "Action");

TAMMY KAY HARPER, and individual; COLLIN TAYLOR WILLIAMS, a minor, by and through his Guardian Ad Litem, TAMMY KAY HARPER; ZACHERY TAYLOR WILLIAMS, a minor, by and through his Guardian Ad Litem, TAMMY KAY HARPER; HOME LIGHTING, a business entity; and GARY GALDD, an individual (collectively referred to herein as the "Plaintiffs");

JAE CHUNG, an individual;

NEWMARK MERRILL COMPANIES, LLC, a California limited liability company ("NewMark"); and

YNS SHOPPING PLAZA, LLC, a California limited liability company (referred to as "YNS").

These parties are referred to collectively as the "Parties" and singularly as "Party."

## RECITALS

WHEREAS, Plaintiffs filed the Action against YNS, NewMark and certain other defendants, including JAE CHUNG; BGI HOLDINGS II, LLC, a Delaware limited liability company, BRISTOL REALTY HOLDINGS I, LLC, a Delaware limited liability company, and BRISTOL GROUP, INC., a California corporation (collectively referred to as "BGI Defendants"); and CLAWS & PAWS, a business entity of unknown form and TINA NASHICK, an individual (referred to as "Claws & Paws");

WHEREAS, Jae Chung successfully petitioned the court for an order granting summary judgment in his favor and against the Plaintiffs, and Jae Chung was dismissed with prejudice from YNS' cross-complaint on December 16, 2011;

WHEREAS, Plaintiffs entered into a settlement with the BGI Defendants and subsequently dismissed the BGI Defendants from the Action with prejudice on January 14, 2011;

1

WHEREAS, Plaintiffs entered into a settlement with Claws & Paws and subsequently dismissed Claws & Paws from the Action with prejudice on December 22, 2010;

WHEREAS, NewMark successfully petitioned the court for an order entering judgment of nonsuit in its favor and against the Plaintiffs, to which Plaintiffs stipulated, on January 25, 2012;

WHEREAS, Jae Chung and NewMark filed a counter-claim in the Action against YNS, which counter-claim remained pending at the time of trial;

WHEREAS, YNS filed a counter-claim in the Action against NewMark, which counter-claim remained pending at the time of trial;

WHEREAS, minor Plaintiffs Collin Taylor Williams and Zachary Taylor Williams were dismissed from the Action with prejudice, which dismissal was memorialized in the court record on January 25, 2012, before the Honorable Retired Judge Fry;

WHEREAS, the Parties entered into settlement negotiations in good faith before the Honorable Retired Judge Fry, resulting in a global settlement and the Parties being desirous of resolving all differences of any and all nature arising out of and/or pertaining to the Action including all counterclaims and any issues arising therefrom as set forth herein below.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals, the mutual covenants and promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Parties, the Parties agree as follows:

1.  **PAYMENTS AND CONSIDERATION.**

    On or before March 3, 2012 and upon the full execution of this Agreement by the Parties and their legal counsel, the following payments shall be made totaling Four Hundred and Forty Thousand Dollars ($440,000) (the "Settlement Funds"):

    1.1    The sum of Four Hundred and Thirty Thousand Dollars ($430,000.00) shall be paid by YNS to the Plaintiffs, by check or checks made payable to the "Law Offices of Ball and Roberts" and delivered to counsel for the Plaintiffs, Stephen Ball, Esq, 300 N. Lake Avenue, Suite 1000, Pasadena, California 91101.

    1.2    The sum of Ten Thousand Dollars ($10,000.00) shall be paid by NewMark to the Plaintiffs, by check or checks made payable to the "Law Offices of Ball and Roberts" and delivered to counsel for the Plaintiffs,

Stephen Ball, Esq, 300 N. Lake Avenue, Suite 1000, Pasadena, Ca. 91101.

## 2. FULL SETTLEMENT AND DISTRIBUTION OF SETTLEMENT FUNDS.

2.1 _Settlement of Case in Chief._ By their signatures on this Settlement Agreement, Plaintiffs and their counsel of record, Stephen Ball, Esq., agree that Mr. Ball will distribute and Plaintiffs will accept the Settlement Funds without any further demand against YNS from the Plaintiffs or any of them or their Related Persons or entities (as defined below), for any financial or other consideration beyond that set forth in this Agreement. Plaintiffs acknowledge and agree that they have agreed to accept the Settlement Funds in full settlement of any and all damages and/or losses sustained by reason of all matters that were or that could have been the subject of the Action.

2.2 _Settlement of YNS Cross-Claim against NewMark._ In exchange for a mutual waiver of fees and costs, and by its signature on this Settlement Agreement, YNS agrees that it will not make any further demand against NewMark or its Related Persons or entities (as defined below), for any financial or other consideration and further agrees that this Settlement Agreement memorializes a full settlement of any and all damages and/or losses sustained by reason of all matters that were or that could have been the subject of the cross-claim brought by YNS against NewMark in the Action.

2.3 _Settlement of NewMark Cross-Claim against YNS._ In exchange for a mutual waiver of fees and costs, and by its signature on this Settlement Agreement, NewMark agrees that it will not make any further demand against YNS or its Related Persons or entities (as defined below), for any financial or other consideration and further agrees that this Settlement Agreement memorializes a full settlement of any and all damages and/or losses sustained by reason of all matters that were or that could have been the subject of the cross-claim brought by NewMark against YNS in the Action.

2.4 _Settlement of Claim for Costs by NewMark against Plaintiffs._ By its signature on this Settlement Agreement, NewMark agrees that it will not make any further demand against the Plaintiffs or their Related Persons or entities (as defined below), for any financial or other consideration and further agrees that this Settlement Agreement memorializes a full settlement of any and all damages and/or losses sustained by reason of all matters that were or that could have been the subject of the claim for costs brought by NewMark against Plaintiffs in the Action.

## 3. RELEASES.

3.1 As used herein, "Related Persons" shall mean all officers, directors, partners, shareholders, members, employees, agents, servants, trustees, attorneys, parent companies, subsidiaries, affiliated companies, spouses, children, family, insurers, sureties, predecessors, successors, assigns, heirs, representatives, executors, and all other affiliated, related and involved persons and entities past, present and future.

3.2 As used herein, "Claims" shall mean any and all past, present and future claims, demands, obligations, liens, liabilities, costs, expenses, attorneys' fees, damages, suits, actions, causes of actions, judgments, applications, and disputes of any nature

3

whatsoever whether actually asserted or which could have been asserted, whether known or unknown, suspected or unsuspected, actual or potential, absolute or contingent, pending or anticipated, in law and/or equity.

3.3    Release by Plaintiffs to YNS.  Plaintiffs and each of them hereby forever release and discharge YNS, individually and on behalf of Home Lighting, and each of their Related Persons, from and against any and all Claims arising out of the facts pleaded in the Action and any and all damages and/or losses sustained by reason of all matters that were or that could have been the subject of the Action.

3.4    Release by Plaintiffs to Jae Chung and NewMark.  Plaintiffs acknowledge that final judgments have been entered in favor of Jae Chung an NewMark in this action, and Plaintiffs hereby forever release and discharge Jae Chung and NewMark and each of their Related Persons, from and against any and all Claims arising out of the facts pleaded in the Action and any and all damages and/or losses sustained by reason of all matters that were or that could have been the subject of the Action.

3.5    Release by YNS to NewMark.  YNS, and each of their Related Persons, hereby forever releases and discharges NewMark and each of their Related Persons, from and against its counter-claim against NewMark and any other Claims arising out of the facts pleaded in the Action and any and all damages and/or losses sustained by reason of all matters that were or that could have been the subject of the Action, including all fees and costs.

3.6.    Release by NewMark to YNS.  NewMark, and each of their Related Persons, hereby forever releases and discharges YNS and each of their Related Persons, from and against its counter-claim against YNS and any and all Claims arising out of the facts pleaded in the Action and any and all damages and/or losses sustained by reason of all matters that were or that could have been the subject of the Action, including all fees and costs.

3.7    Release by Jae Chung and NewMark to Plaintiffs.  NewMark and each of their Related Persons, hereby forever releases and discharges Plaintiffs and each of their Related Persons, from and against its costs bill in the amount of [figure to be provided by NewMark]

4.    **WAIVER.**

It is understood and agreed by all Parties to this Agreement that all rights or benefits under Section 1542 of the California Civil Code are hereby expressly waived, including those relating to waiving and releasing all claims, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which in any way relate to the Action, any related cross-actions between the Parties, and the matters released in this Agreement.  Section 1542 provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE,

4

WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties acknowledge that they may hereafter discover claims or facts in addition to or different from those which they now know or believe to exist with respect to the subject matter of this Agreement and which, if known or suspected at the time of executing this Agreement, may have materially affected this settlement. Nevertheless, the Parties hereby waive any rights, claims or causes of action that might arise as a result of such different or additional claims or facts. The Parties acknowledge that they understand the significance and consequence of such release and such specific waiver of Section 1542.

5.    **REPRESENTATIONS, WARRANTIES, AND COVENANT NOT TO SUE.**

The Parties covenant and agree never to commence and/or prosecute against each other or their Related Persons, or any of the Parties' insurance carriers, any legal action and/or other proceeding based in whole or in part upon the Claims, demands, causes of action, obligations, damages and/or liabilities released in this Agreement (except as necessary to enforce this Agreement), and/or any legal action or other proceeding based in whole or in part upon any Claim, demand, cause of action, obligation, damage and/or liability arising out of or relating to the Action. This Agreement may be pled by any released Party against whom an action is commenced as a full and complete defense to any action or other proceeding, as a basis for abatement of, or injunction against, such action to the extent of the releases provided herein.

6.    **CONFIDENTIALITY.**

The Parties agree that neither they nor their attorneys nor their representatives shall reveal to anyone, other than as may be mutually agreed to in writing or may be required in a legal proceeding or as may be necessary to enforce this Agreement, any of the terms of this Agreement or any of the amounts, numbers, or terms and conditions of any sums payable hereunder except as required by law or as necessary to enforce the terms of this Agreement. The Parties are allowed to reveal such information to their professional representatives, including but not limited to their insurers, attorneys and accountants.

7.    **WARRANTY OF AUTHORIZED SIGNATORIES AND NON-ASSIGNMENT OF CLAIMS.**

Each signatory to this Agreement warrants and represents that he or she is competent and authorized to enter into this Agreement on behalf of the Party or Parties for whom he or she purports to sign and that no assignment of any Claim or right (in whole or in part) has been made by him or her to any other person or entity.

8.    **ACKNOWLEDGMENT OF COMPROMISE/NO ADMISSION OF LIABILITY.**

This Agreement is the result of a compromise among the Parties and shall never be considered at any time or for any purpose as an admission of liability and/or

5

responsibility on the part of any Party herein released. The payment of any sum of money in consideration for the execution of this Agreement or the absence of any payment shall not constitute, nor be construed as, an admission of any liability whatsoever by any Party herein released.

9.    **EXECUTION AND FILING OF REQUESTS FOR DISMISSALS.**

9.1    Plaintiffs, through their counsel, shall execute and file with the Superior Court, County of Riverside, any and all documents necessary to effectuate a dismissal with prejudice of YNS from the Action, consistent with this Agreement, within one week after receipt of the Settlement Funds described in this Settlement Agreement. Conformed copies shall thereafter be provided forthwith to all Parties and their counsel.

9.2    YNS, through its counsel, shall execute and file with the Superior Court, County of Riverside, any and all documents necessary to effectuate a dismissal with prejudice of its cross-claim against NewMark, within one week after Settlement Funds described in this Settlement Agreement are paid to the Plaintiffs.

9.3    NewMark, through its counsel, shall execute and file with the Superior Court, County of Riverside, any and all documents necessary to effectuate a dismissal with prejudice of its cross-claim against YNS, within one week after Settlement Funds described in this Settlement Agreement are paid to the Plaintiffs.

9.4    NewMark, through its counsel, shall execute and file with the Superior Court, County of Riverside, any and all documents necessary to effectuate a dismissal with prejudice of its claim for costs against Plaintiffs, within one week after Settlement Funds described in this Settlement Agreement are paid to the Plaintiffs.

10.    **ADDITIONAL DOCUMENTS/ACTIONS.**

Each party to this Agreement hereby agrees to cooperate fully and to execute any and all supplementary documents and to take all additional actions, which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

11.    **ATTORNEYS' FEES.**

The Parties acknowledge and agree that each will bear its own costs, expenses and attorneys' fees arising out of and/or connected with the Action, the negotiation, drafting and execution of this Agreement, and all matters arising out of or connected therewith. However, in the event any action is brought by any Party to enforce this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees and costs, in addition to all other relief to which the Party may be entitled.

12.    **CONSTRUCTION OF AGREEMENT.**

This Agreement is the product of negotiation and preparation by and among the Parties and their respective attorneys. The Parties, therefore, expressly acknowledge and

agree that this Agreement shall not be deemed prepared or drafted by one party or another, or its attorneys, and this Agreement will be construed accordingly.

13.    **GOVERNING LAW.**

This Agreement shall be interpreted in accordance with and governed in all respects by the laws of the State of California. Any action brought to enforce this Agreement shall be brought in the appropriate California State Court having proper jurisdiction and venue.

The Parties request that the Superior Court, County of Riverside, retain jurisdiction over the parties to enforce the Settlement Agreement until performance of the Settlement Agreement has been completed by each party hereto pursuant to California Code of Civil procedure §§ 664.6 and 664.7. The Parties further agree pursuant to California Evidence Code § 1122 that this Agreement shall be admissible for enforcement purposes.

14.    **BINDING EFFECT**.

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective Related Persons.

15.    **SEVERABILITY.**

If any provision or any part of any provision of this Agreement is for any reason held to be invalid, unenforceable, or contrary to any public policy, law, statute and/or ordinance, the remainder of this Agreement shall not be affected and shall remain valid and fully enforceable.

16.    **COUNTERPARTS.**

This Agreement may be executed in counterparts. All executed counterparts shall constitute an Agreement, which shall be binding upon all Parties, notwithstanding that the signatures of all the Parties' designated representatives do not appear on the same page. A facsimile or copy of any signature herein shall be deemed an original.

17.    **BENEFIT OF COUNSEL.**

In entering into this Agreement and Release, the Parties expressly acknowledge and represent that they have obtained legal counsel from an attorney concerning the legal consequences of this Agreement, that the terms of this Agreement have been completely read and explained to them by their attorney(s), and that the terms of this Agreement are fully understood and voluntarily accepted.

18.    **TAX CONSEQUENCES.**

It is understood by the Parties and their Related Persons that each Party shall obtain their own advice regarding any potential tax consequences of this Agreement and that the other Parties are not responsible, in any way, for explaining the tax consequences of this Agreement to the Plaintiffs or their Related Persons and entities.

7

19.    **GOOD FAITH SETTLEMENT**

The Parties hereto stipulate and agree that the settlement set forth herein as to all Parties and their Related Persons and entities is a good faith settlement as that term is defined in California Code of Civil Procedure §§ 877 and 877.6.

20.    **INTEGRATED AND ENTIRE AGREEMENT**.

This Agreement constitutes the entire understanding between the Parties and supersedes any and all other agreements, understandings, negotiations, or discussions, either oral or in writing, express or implied, between the Parties concerning the Action, and the matters released herein. The Parties each acknowledge that no representations, inducements, promises, agreements or warranties, oral or otherwise, have been made by them, or anyone acting on their behalf, which are not embodied in this Agreement and that they have not executed this Agreement in reliance on any such representations, inducements, promises, agreements or warranties. No modification, waiver, or termination of this Agreement shall be valid or binding unless executed in writing and signed by each Party. There are no representations, warranties, agreements, arrangements, undertaking, oral or written, between or among the parties relating to the subject matter of this Agreement which are not fully expressed herein.

This Agreement is executed on the dates set forth below.

THE UNDERSIGNED SETTLING PARTIES HAVE READ THE FOREGOING
SETTLEMENT AGREEMENT AND GENERAL RELEASE AND FULLY
UNDERSTAND THE CONTENTS AND ALL OF THE TERMS CONTAINED
THEREIN THIS MUTUAL RELEASE OF ALL CLAIMS HAS BEEN READ AND
APPROVED AS TO FORM AND CONTENT.

DATED: 2·27, 2012          _____
                           TAMMY KAY HARPER

DATED: 2·27, 2012          _____
                           COLLIN TAYLOR WILLIAMS, a minor, by and
                           through his Guardian Ad Litem, TAMMY KAY
                           HARPER

DATED: 2·27, 2012          _____
                           ZACHERY TAYLOR WILLIAMS, a minor, by
                           and through his Guardian Ad Litem, TAMMY
                           KAY HARPER

DATED: 2·27, 2012          HOME LIGHTING

                           BY: _____

                           ITS: _____

9

DATED: FEB. 21ᵗʰ , 2012     _____
                            GARY GLADE

DATED: 2/27 , 2012     _____
                            STEPHEN BALL, Esq., Counsel for Plaintiffs

DATED: _____, 2012     _____
                            JAE CHUNG

DATED: _____, 2012     NEWMARK MERRILL COMPANIES, LLC

                            BY: _____

                            ITS: _____

DATED: _____, 2012     _____
                            CHRISTOPHER WHITE, Counsel for Jae Chung
                            and NewMark Merrill Companies, LLC

10

DATED: _____, 2012

_____
GARY GLADD


DATED: _____, 2012

_____
STEPHEN BALL, Esq., Counsel for Plaintiffs


DATED: 2/29 , 2012

_____
JAE CHUNG


DATED: _____, 2012

NEWMARK MERRILL COMPANIES, LLC



BY: _____


ITS: _____



DATED: _____, 2012

_____
CHRISTOPHER WHITE, Counsel for Jae Chung
and NewMark Merrill Companies, LLC

10

DATED: _____, 2012

_____
GARY GLADD

DATED: _____, 2012

_____
STEPHEN BALL, Esq., Counsel for Plaintiffs

DATED: _____, 2012

_____
JAE CHUNG

DATED: _____, 2012

NEWMARK MERRILL COMPANIES, LLC

BY: _____

ITS: _____

DATED: _____, 2012

_____
CHRISTOPHER WHITE, Counsel for Jae Chung
and NewMark Merrill Companies, LLC

10

DATED: _____, 2012    _____
GARY GLADD


DATED: _____, 2012    _____
STEPHEN BALL, Esq., Counsel for Plaintiffs


DATED: _____, 2012    _____
JAE CHUNG


DATED: _____, 2012    NEWMARK MERRILL COMPANIES, LLC



BY: _____


ITS: _____


DATED: 3/2, 2012    _____
~~CHRISTOPHER WHITE,~~ Counsel for Jae Chung
and NewMark Merrill Companies, LLC
WILLIAM J. PENISTEN

# Exhibit "3"

## CONSENT TO SETTLEMENT AND AUTHORIZATION
## TO MAKE DISBURSEMENTS

WE, GARY GLADD and TAMMY GLADD, hereby authorize our attorneys, Ball & Roberts to settle all our claims arising out of the incident which occurred on or about May of 2003 and to dismiss with prejudice, our lawsuit filed in the Riverside Superior Court, Case No. RIC429560 for the total amount of Four Hundred Forty Thousand Dollars ($440,000.00).

Clients further understand that they are responsible for all bills or charges to anyone that are not set forth below. _____ (initials)

Out of settlement funds, we hereby authorize the following payments and disbursements:

1.  To Ball & Roberts
    Attorneys' fees:                                    $  146,666.66

2.  To Ball & Roberts
    For costs:

    | | | | |
    |---|---|---|---|
    | Superior Court (jury fees) | 1,351.94 | | |
    | Janney Atty Service | 409.00 | | |
    | Hines Crt. Rptrs. | 1,035.95 | | |
    | S.D. Epear (expert) | 11,293.67 | | |
    | Bayshore Environ. (expert) | 660.00 | | |
    | Reith Co. (expert) | 16,048.00 | | |
    | Forensisgroup (expert) | 5,136.25 | | |
    | SRF Environ. (expert) | 7,500.00 | | |
    | Merrill Corp. | 809.10 | | |
    | Airfare (deposition) | 575.40 | | |
    | Compex (medical records) | 497.31 | | |
    | Judicate West (mediator) | 3,700.00 | | |
    | Copy Right (copies) | 340.39 | | |
    | Fed Ex | 601.40 | | |
    | Dr. Balluyut | 400.00 | | |
    | Messengers | 145.00 | | |
    | Mileage & Parking | 335.51 | | |
    | In-House copies | 921.40 | $ | 51,760.32 |

3.  Net Proceeds                                        $    241,573.02

                            TOTAL       $    440,000.00

We agree to the settlement and disbursements and agree to give our attorneys authority to execute all documents and drafts to complete and finalize the settlement and distribution described above.

Client(s) understands attorneys are not tax specialists and have not rendered legal advice regarding the tax consequences of the monies received from this settlement.

DATED:  February 16, 2012

_____
GARY GLADD

DATED:  February 16, 2012

_____
TAMMY GLADD

DATED:  February ___, 2012

_____
STEPHEN C. BALL

THE UNDERSIGNED SETTLING PARTIES HAVE READ THE FOREGOING
SETTLEMENT AGREEMENT AND GENERAL RELEASE AND FULLY
UNDERSTAND THE CONTENTS AND ALL OF THE TERMS CONTAINED
THEREIN THIS MUTUAL RELEASE OF ALL CLAIMS HAS BEEN READ AND
APPROVED AS TO FORM AND CONTENT.

DATED: 2-28 , 2012

_____
TAMMY KAY HARPER

DATED: 2-28 , 2012

_____
COLLIN TAYLOR WILLIAMS, a minor, by and
through his Guardian Ad Litem, TAMMY KAY
HARPER

DATED: 2-28 , 2012

_____
ZACHERY TAYLOR WILLIAMS, a minor, by
and through his Guardian Ad Litem, TAMMY
KAY HARPER

DATED: 2-28 , 2012

HOME LIGHTING

BY: _____

ITS: _____

9

DATED: _Feb. 28th_, 2012           _[signature]_
                                     GARY GLADD

DATED: _____, 2012         _____
                                      STEPHEN BALL, Esq., Counsel for Plaintiffs

DATED: _____, 2012         _____
                                      JAE CHUNG

DATED: _____, 2012         NEWMARK MERRILL COMPANIES, LLC

                                      BY: _____

                                      ITS: _____

DATED: _____, 2012         _____
                                      CHRISTOPHER WHITE, Counsel for Jae Chung
                                      and NewMark Merrill Companies, LLC

10

FORM B104 (08/07)                                                                 2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>TIMOTHY CREAGER and SUSAN CREAGER | DEFENDANTS<br>ZACHARY WILLIAMS aka ZACHARY TAYLOR WILLIAMS and<br>COLLIN WILLIAM aka COLLIN TAYLOR WILLIAMS |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>ROSENDO GONZALEZ (SBN 137352)<br>GONZALEZ & ASSOCIATES, PLC<br>LOS ANGELES, CA 90013<br>213 452 0070 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor     ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☑ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
1. To avoid the fraudulent transfer of property of the estate against the Defendants
2. To recover the voided transfer of property of the estate

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer   (marked "1")
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $20,000.00 |

Other Relief Sought
1. For costs of suit incurred herein
2. For such other and further relief as the Court may deem just and proper

FORM B104 (08/07), page 2                                                     2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | |
|---|---|
| **NAME OF DEBTOR**<br>GARY J. GLADD f/a/w Tag Lighting dba Home Lighting and TAMMY GLADD<br>aka Tammy Harper aka Tammy Williams aka Tammy Jones | **BANKRUPTCY CASE NO.**<br>6:12-bk-35247-MH |

| **DISTRICT IN WHICH CASE IS PENDING**<br>Central | **DIVISIONAL OFFICE**<br>Riverside | **NAME OF JUDGE**<br>Mark D. Houle |
|---|---|---|

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |

| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
|---|---|---|

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| **DATE**<br>November 7, 2014 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)**<br>Rosendo Gonzalez |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.